# IN THE COURT OF APPEALS OF IOWA

No. 3-1092 / 12-2061
Filed February 5, 2014

**CITY OF COUNCIL BLUFFS,**
    Plaintiff-Appellee,

**vs.**

**MICHAEL K. LIMMER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Gordon C. Abel, Judge.

Rental property owner Michael Limmer appeals the district court's order reversing a magistrate's ruling that dismissed a city-issued citation for failure to provide adequate smoke detection on the property. **AFFIRMED.**

Rodney C. Dahlquist Jr. and Joshua W. Weir of Dornan, Lustgarten & Troia, Omaha, Nebraska, for appellant.

Don R.J. Bauermeister and Michael A. Sciortino, Council Bluffs, for appellee.

Heard by Potterfield, P.J., and Doyle and Bower, JJ.

**DOYLE, J.**

Rental property owner Michael Limmer appeals the district court's order reversing a magistrate's ruling that dismissed a city-issued citation for failure to provide adequate smoke detection on his property. The district court concluded the city fire official was authorized by law to issue Limmer the citation and that issuance was an appropriate exercise of the official's authority. We affirm the ruling of the district court.

### I. Background Facts and Proceedings.

Michael Limmer owns rental properties in Council Bluffs, Iowa (the City), including a property located on Avenue C (the property). On December 23, 2010, Limmer submitted to the city a "Rental Self Certification Form" certifying he had inspected the property and verified it was in compliance with all of the minimum quality standards for residential dwellings required by the City. Among the items marked as verified by Limmer on the form's checklist was that the property had smoke detectors.[1]

On February 2, 2011, a fire occurred at the property, and one occupant was injured. Council Bluffs fire inspector Robert Caughey inspected the property that day and found no smoke detectors present.[2] Caughey reported the property's lack of smoke detectors to Council Bluffs building official Steve Carmichael and to fire department Captain Justin James, the "inspector/investigator/law enforcement officer" for the Council Bluffs Fire

---

[1] The terms "smoke alarms" and "smoke detectors" were used interchangeably throughout the case. For the sake of consistency, we will use the term "smoke detectors" in this opinion.

[2] A tenant testified the property had not had smoke detectors since she moved there in March 2007.

Marshal's Office. James was directed "to conduct an investigation to find whether there was probable cause to file a citation against [Limmer] for [an infraction of the Council Bluffs Municipal Code (City Code)]."

On February 15, 2011, Carmichael and Council Bluffs housing inspector Maureen Eiler inspected the property. In addition to the lack of smoke detectors, Eiler found several other code violations. The next day, Eiler issued a "Notice of Violation" to Limmer setting forth a number of violations of the "International Property Maintenance Code [(IPMC)][3] and/or City Code", including that there were no smoke detectors in the property. The notice stated Limmer had seven days to submit a written plan of action for correcting the deficiencies and thirty days to correct the deficiencies. Eiler left for vacation shortly thereafter.

On February 23, 2011, James issued Limmer four citations for first offense infractions of the City Code at the property. At issue here is citation number 11-03, which charged that on February 3, 2011, Limmer "did unlawfully and willfully" violate section 17.02.010 of the [City Code] and IPMC section 704.2 "by not providing adequate smoke detection in a rental property."[4] The citation provided for a fine of $750 and court costs of $85. Limmer appeared and denied each citation, and the matter was set for trial.

Meanwhile, Eiler learned after returning from vacation that the city's fire department had issued Limmer citations. In May 2011, Limmer informed her he

---

[3] In his appellate brief, Limmer states: "In 2011, the City of Council Bluffs adopted the [IPMC], 2009 Edition, by Ordinance 6108. It was codified in [City Code] § 17.02.010, which states in relevant part: "That a certain document being marked and designated as '[IPMC]', 2009 edition . . . are adopted as the property maintenance code of the City of Council Bluffs. . . ." The City does not dispute this.

[4] The other three citations issued by James are not at issue here.

had corrected the deficiencies. She then re-inspected the property and found the deficiencies had been corrected to the minimum required standards.

Trial on the citations was held before a magistrate in September 2011. Eiler testified she was quite familiar with Limmer and his rental properties. She explained it was not unusual for her to get complaints concerning his properties or to find, upon inspection, his properties were not up to code, although his rental registrations stated otherwise. She testified Limmer told her he will get "things done . . . in his own time and contact [her] for an inspection when it's done." She testified the citations were not issued at her request, and she "personally [had] never dealt with [Limmer] without giving him a minimum of [thirty] days."

James testified he issued the citations to Limmer because he found probable cause that there were City Code infractions. Typically the Fire Marshall's office sought compliance rather than issuing citations. Nevertheless, James did not issue Limmer a notice-of-violation letter, nor did he give Limmer any amount of time to remedy the violations. James testified he believed Iowa Code section 364.1 (2011) permitted him to issue the citations "to preserve the rights, privileges, and property of the [C]ity or its [residents] and to preserve and improve the peace, safety, health, welfare, comfort and convenience of its residents."

At the close of the City's case, and again at the end of the trial, Limmer moved to dismiss the citations." He asserted that the "more specific" IPMC procedures "trump the more general grant of authority conferred by the legislature [in Iowa Code section 364.1]." Because the citations did not "comply with the requirements found in the [IPMC]," Limmer maintained the citations were

not valid. He also asserted James's actions were "arbitrary and capricious" because Limmer was not given notice and time to correct the conditions to be in compliance. Finally, Limmer argued the City was not permitted to pursue multiple remedies. The City resisted Limmer's motion to dismiss.

The magistrate's ruling and order dismissed all four citations. The magistrate noted the citations were issued by James without first giving Limmer notice and an opportunity to correct the condition. The magistrate found this "contrary to the recently enacted statutory scheme ordained by the municipality." Because "[t]he process initiated by the Fire Marshall's office was the procedure formerly followed in the city and was not in accordance with the presently mandated procedure" the magistrate concluded "the citations cannot stand but will be dismissed."

The City appealed to district court, and a hearing was held. The district court reversed the magistrate's order, finding "a dual-track procedure" was authorized:

> [S]ection 364.22(9) of the Iowa Code provides for dual relief, both penalty and compliance. Similarly section 106.4 of the IPMC also provides alternative procedures in that it indicates that a person can be prosecuted for a violation or for failing to comply.

The court noted James was a law enforcement officer and therefore was "not bound by the compliance procedures applicable to a *Code Official.*" The court concluded James's decision to issue a citation to Limmer "was an appropriate exercise of the City's authority to protect the public, in addition to and in conjunction with the code official's compliance procedures." Additionally, the

district court rejected Limmer's contentions that the City's actions violated his due process rights and were arbitrary and capricious.

The district court concluded the City met its burden in showing that Limmer violated section 704.2 of the IPMC as incorporated in the City Code in failing to have smoke detectors in his rental property. A fine of $750, plus costs, was imposed against Limmer.

Limmer now appeals.

## II. *Scope and Standards of Review.*

Interpretation of a city ordinance "is a question of law and is for us to decide." *Baker v. Bd. of Adjustment*, 671 N.W.2d 405, 416 (Iowa 2003). In interpreting ordinances, we "apply the general rules of construction for statutes" and "therefore look first to the ordinance's language." *Id.* Like statutory interpretation, "[w]e do not search for meaning beyond the express terms of an ordinance when the ordinance is plain and its meaning is clear." *Id.* Rather, legislative intent is determined by what an ordinance says, not what it should or might have said. *Id.* To the level that Limmer raises a constitutional right, our review is de novo. *Huisman v. Miedema*, 644 N.W.2d 321, 324 (Iowa 2002).

## III. *Discussion.*

On appeal, Limmer contends the City was limited to one method of seeking compliance and punishment, as set forth in the City Code in the form of the IPMC, and, because the procedures in that ordinance were not followed, he asserts the citation is void. Additionally, he argues the district court erred in finding the actions of the City were not arbitrary and capricious as applied to him. We address the arguments in turn.

### A. *Issuance of Citation.*

Sometime in 2011, the City adopted the 2009 edition of the IPMC,[5] which "is founded on principles intended to establish provisions . . . that adequately protect[] public health, safety and welfare . . . ." *See* 2009 IPMC, at iii (Int'l Code Council, Inc. 2009); *see also* Council Bluffs, Iowa, City Code § 17.02.010 (2011). To that end, the IPMC

> shall be construed to secure its expressed intent, which is to ensure public health, safety and welfare in so far as they are affected by the continued occupancy and maintenance of structures and premises. Existing structures and premises that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein.

IPMC § 101.3. However, if

> there is a conflict between a general requirement and a specific requirement, the specific requirement shall govern. Where differences occur between provisions of this code and the referenced standards, the provisions of this code shall apply. Where, in a specific case, different sections of this code specify different requirements, the most restrictive shall govern.

*Id.* § 102.1.

Under the IPMC, it is "unlawful for a person . . . to be in conflict with or in violation of any of the provisions of [the IPMC]." *Id.* § 106.1. Chapter 7 of the IPMC sets forth "Fire Safety Requirements" governing the minimum conditions and standards for fire safety relating to structures and exterior premises, including . . . equipment to be provided." *Id.* § 701.1. "All systems, devices and equipment to detect a fire, actuate an alarm, or suppress or control a fire or any combination thereof shall be maintained in an operable condition at all times in

---

[5] All original emphasis in quoted sections from the IPMC is omitted unless otherwise stated.

accordance with the International Fire Code." *Id.* § 704.1. Section 704.2, the IPMC section cited in the citation issued to Limmer, expressly requires smoke detectors

> be installed and maintained . . . "[o]n the ceiling or wall outside of each separate sleeping area in the immediate vicinity of bedrooms . . . [, in] each room used for sleeping purposes . . . [, and in] each story within a dwelling unit, including basements and cellars but not including crawl spaces and uninhabitable attics.

It is the duty of the owner of the premises to "provide and maintain such fire safety facilities and equipment in compliance with these requirements," and "[a] person shall not . . . permit another person to occupy any premises that do not comply with the requirements of this chapter." *Id.* § 701.2.

The IPMC charges the "code official" or any duly authorized representative with the administration and enforcement of the IPMC. *Id.* § 202. The IPMC then sets forth notice requirements and procedures the code official is follow to enforce the requirements of the IPMC upon the violator. *See id.* §§ 107.1-.6.

Limmer admits that under City Code section 1.95.020, "a violation of the IPMC as adopted by the City is a municipal infraction." A "municipal infraction" is defined by the City Code as "a civil offense *punishable by a civil penalty* as set forth in the schedule of civil penalties [in section 1.95.020(b) unless otherwise provided in the City Code]." City Code § 1.95.010(1) (emphasis added). "Seeking a civil penalty as authorized in [City Code chapter 1] does not preclude the [C]ity from seeking alternative relief from the court in the same action. Such alternative relief may include, *but is not limited to*, an order for abatement or injunctive relief." *Id.* § 1.95.020(d) (emphasis added). Similarly, Iowa Code section 364.22, concerning municipal infractions, subsection 9, provides that

"[s]eeking a civil penalty as authorized [section 364.22] does not preclude a city from seeking alternative relief from the court in the same action."

Furthermore, "[a]ny employee or *other official authorized by the [C]ity* to enforce the [City Code] may issue a civil citation to a person who is alleged to have committed a municipal infraction." City Code § 1.95.030(a) (emphasis added).

> In addition to the department(s) authorized within the [City Code] to enforce code provisions, *all law enforcement agencies and their sworn officers* operating within the city limits of Council Bluffs are authorized to enforce *any and all provisions of this code*, *either by municipal infraction process or criminal process or both*.

*Id.* § 1.97.010 (emphasis added). Correspondingly, Iowa Code section 364.22(4) states that "[a]n officer authorized by a city to enforce a city code or regulation may issue a civil citation to a person who commits a municipal infraction."

Based upon our reading of the above cited City Code, Iowa Code, and IPMC sections, we agree with the district court that James, as a legal officer, was authorized to issue a citation with a civil penalty to Limmer for a violation of the City Code, even though the City housing inspector, as a code official, had already issued Limmer a notice of violation for the same violation. We also agree James was not required to provide a notice of violation prior to issuing the citation. Under the IPMC, it is only the code official who is required to first issue a violator notice. *See* IPMC § 106.3 The Iowa Code, the City Code, and the IPMC all include language permitting a city or designated city officer to seek an additional form of relief to correct a violation or punish a violator—there simply is no conflict between the internal sections of the IPMC, the IPMC and the City Code, and the IPMC and the Iowa Code. We find no error in the district court's

conclusion that James's issuance of the civil-penalty citation to Limmer "was an appropriate exercise of the City's authority to protect the public, in addition to and in conjunction with the *code official's* compliance procedures." We therefore affirm the ruling of the district court reversing the dismissal by the trial court.

**B. *Arbitrary and Capricious as Applied to Limmer*.**

Because we find James was not required to follow the procedures set forth in the IPMC before issuing a civil-penalty citation to Limmer for his violation of the City Code, we conclude his failure to do so cannot be an arbitrary and capricious exercise of authority.

**IV. *Conclusion*.**

For the foregoing reasons, we affirm the ruling of the district court.

**AFFIRMED.**